JAMES GUSEH,                             )
                                         )
              Plaintiff,                 )
                                         )
       v.                                )
                                         )
NORTH CAROLINA CENTRAL                   )
UNIVERSITY through the BOARD             )
OF GOVERNORS OF THE                      )          1:04CV42
UNIVERSITY OF NORTH                      )
CAROLINA and BERNICE D.                  )
JOHNSON, in her individual and          )
 official capacity as Dean of the        )
College of Arts and Sciences of          )
North Carolina Central University,       )
                                         )
              Defendants.                )

**RECOMMENDATION AND ORDER OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, a faculty member at Defendant North Carolina Central University

(NCCU), has sued under Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. § 2000e *et seq.* ("Title VII"), under 42 U.S.C. § 1983, and under the North

Carolina Constitution, alleging discrimination based upon nationality. Under Title VII,

Plaintiff has sued NCCU through the Board of Governors of the University of North

Carolina (Board of Governors) for damages and attorney's fees. Under § 1983,

Plaintiff has sued NCCU, through the Board of Governors, and Dr. Bernice Johnson

(Dean Johnson), in her official capacity, for declaratory and injunctive relief; and has

sued Dean Johnson, in her individual capacity, for declaratory and injunctive relief and monetary damages. Under the North Carolina Constitution, Plaintiff has sued NCCU through the Board of Governors and Dean Johnson in her official capacity for damages. Plaintiff has received a Right-to-Sue letter from the Equal Employment Opportunity Commission (EEOC). This matter is before the court on Defendants' motion for summary judgment (docket no. 10). The parties have filed responsive pleadings and this matter is ripe for disposition.

Also before this court are Defendants' motion to strike (docket no. 19) affidavits and other hearsay in Plaintiff's opposition to Defendants' motion for summary judgment, and Plaintiff's motion to strike (docket no. 24) Defendants' reply brief. Plaintiff has responded to Defendants' motion to strike and Defendants have responded to Plaintiff's motion to strike.

## I. Factual Background

Plaintiff, a native of Liberia and a naturalized American citizen, is a tenured full professor at NCCU in the Department of Public Administration. He was hired in 1997 as an assistant professor and was promoted to full professor and granted tenure in 2002. Defendant Dean Johnson recommended Plaintiff's hiring, promotion, and tenure, and she endorsed his nomination for a Faculty Achievement Award in 2002. Dean Johnson is an African-American, a native of the United States.

Plaintiff has a strong background in areas that inform the discipline of Public

2

Administration. He holds a Bachelors Degree in Economics from Brandeis University, a Masters Degree in Economics from the University of Oregon, a joint Juris Doctor and Masters of Public Administration from Syracuse University, a Masters Degree in Political Economy from the University of Texas at Dallas, and a Ph.D. in Political Economy from the University of Texas at Dallas. In addition to his work at NCCU, Plaintiff has served the Ministry of Finance of the Republic of Liberia both as Assistant Minister of Justice for Commercial Transactions and as an attorney, and has served as Assistant Professor and Director of the Center for Alternative Programs at Shaw University.

The Department of Public Administration at NCCU experienced many problems and much transition during the 1990's and through August 2002, when Ronald Penny (Penny) was hired as the chairperson of that department. Prior to Plaintiff's joining the NCCU faculty, a financial audit and personal scandal forced the resignation of chairman Clarence Brown. When Plaintiff was hired as a faculty member in 1997, Dr. William Lewis (Dr. Lewis) was the chair of the department, but he stepped down in 1999 after what Defendants claim to be a "similarly disastrous tenure." Defs.' Mem. in Supp. of Summ. J., p. 2. Student and faculty morale dropped as did the number of students enrolled in the department; enrollment shrank from 200 in 1994 to fewer than 80 in 2000. *Id*.

After Dr. Lewis stepped down in 1999, the position of chairperson came open four separate times before Penny's hiring in 2002; twice the position was open as an

3

"acting chairperson" and twice as a permanent position. Applications were not taken for the two appointments of "acting chairperson," and there is dispute about whether Plaintiff timely applied for the permanent position in 2000. Plaintiff did apply for the permanent position in 2002. Four times the job was given to someone other than Plaintiff, each time to a native of the United States, and each from outside the department. Plaintiff was twice appointed to serve as Assistant to the Acting Chair.

The final round of hiring in 2002 was the subject of Plaintiff's EEOC complaint. *See* Charge of Discrimination (attached to docket no. 10) ("I applied for and failed to get a promotion to the position for which I applied in January, 2002."). The charging document identifies August 2, 2002, as both the earliest and latest date that discrimination took place. Plaintiff explained:

> I was told . . . that the position was given to . . . Penny, an African-American, because of what he planned to do with the department. I believe that this was a pretext for discrimination because the person who was selected for the position did not meet the key requirements as outlined in the vacancy announcement. I feel that my education and work experience in higher education, research and government indicate that I meet the key requirements for the position.

*Id*. In his EEOC complaint, Plaintiff did not discuss any of his previous applications for the chairperson position.

## II. Defendants' Motion for Summary Judgment

### Standard of Review:  Summary Judgment Standard

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R.

4

CIV. P. 56(c); *Zahodnick v. International Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires a trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact-finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

## Discussion

### The Motions to Strike

The court will address the motions to strike by each side before addressing the substance of the case. Defendants have moved to strike affidavits and other

5

hearsay in Plaintiff's opposition to the summary judgment motion. Defendants make the point that the affidavits of Margaret James and Dr. Kofi Johnson are not properly sworn to and should be stricken. Plaintiff has been permitted leave to cure that deficiency, however, and this much of the motion will be denied. Defendants also move to strike so much of Ms. James' statement that repeats an alleged statement by Dr. Lewis who has not testified to date; a set of unauthenticated NCCU class schedules; various paragraphs of an affidavit from Emmanuel Oritsejafor; various paragraphs of an affidavit from Dr. Kofi Johnson; various paragraphs from Plaintiff's affidavit; and various paragraphs from Behrooz Kalantari's affidavit. Specifically, Defendants contend that certain portions of the challenged affidavits are not based on the personal knowledge of the affiants, or they contain inadmissible hearsay, or both.

In considering a motion for summary judgment, the court can evaluate the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits in making its determination. FED. R. CIV. P. 56(c). According to Rule 56(e), affidavits filed in support of a summary judgment motion

> shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers . . . referred to in an affidavit shall be attached thereto or served therewith . . . the adverse party's response, by affidavits or as otherwise provided by this rule, must set forth specific facts showing that there is a genuine issue for trial.

As Rule 56(e) makes clear, an affidavit submitted on summary judgment "must

6

present evidence in substantially the same form as if the affiant were testifying in court." *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996). Thus, in the absence of an affirmative showing of personal knowledge of specific facts, a court cannot consider such an affidavit in making its summary judgment determination. *See Antonio v. Barnes*, 464 F.2d 584, 585 (4th Cir. 1972). Furthermore, summary judgment affidavits cannot be based on inadmissible hearsay. *Maryland Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1251-52 (4th Cir. 1991); *Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 973-74 n.8 (4th Cir. 1990). The court has carefully examined the portions of the affidavits that Defendants want stricken. To the extent that portions of the challenged affidavits are, indeed, not based on personal knowledge, consist of inadmissible hearsay, or do not otherwise comply with Rule 56(e), they will not be considered on Defendants' motion for summary judgment. Thus, to this extent, Defendants' motion to strike will be granted. The court notes, however, that testimony of a Title VII plaintiff's co-workers that the plaintiff was better qualified for a promotion than the person promoted can be admissible, if those co-workers were in a position to know the plaintiff's qualifications. *See Brooks v. Barnhart*, No. 02-1449, WL 22293796, at **6-7 (10th Cir. Oct. 7, 2003) (collecting cases). Still, that testimony alone is not sufficient to establish pretext. *See id.*

Plaintiff's motion to strike seeks an order of the court striking Defendants' summary judgment reply brief. Plaintiff faults Defendants for asserting the 180-day

7

statute of limitations applicable to this Title VII claim for the first time in their reply brief, and for arguing pretext and animus all over again as they did in their opening summary judgment brief. The court has carefully considered the motion and the response, and the court is convinced that Defendants have the better of the argument and for the reasons set out in the response, which the court adopts as its own, Plaintiff's motion will be denied.

The court will now turn to the heart of the summary judgment analysis. In his complaint, Plaintiff alleges claims under Title VII, 42 U.S.C. § 1983, and the North Carolina Constitution.

Plaintiff's Title VII Claim

The court first considers Plaintiff's Title VII claim against NCCU alleging discriminatory failure to promote based on national origin.[1]  In a Title VII employment discrimination case, the scope of a civil lawsuit is necessarily defined by the charges in a plaintiff's EEOC filing. *See Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000) ("A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit.") (citing *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996)). *See also King v. Seaboard Coast Line R.R.*, 538 F.2d 581, 583 (4th Cir. 1976). The scope is limited such that "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the

_____

[1] As to the Title VII claim, Plaintiff has correctly sued only NCCU since individuals cannot be held liable under Title VII. *See* Compl. ¶ 63.

8

original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *King*, 538 F.2d at 583. Here, in the complaint, Plaintiff points to four instances between 1999 and 2002 in which a vacancy became open at NCCU but where he was not chosen to fill the vacancy. His Title VII failure-to-promote claim appears to be based on all four dates. For instance, he alleges that in 1999, he was not appointed to the position of Chairperson for the Department of Public Administration, *see* Compl. ¶¶ 23, 24, 26. He further states that the position of Senior Faculty/Chairperson of the Department of Public Administration became available three times between 1999 and 2002, but he was not promoted to the position on any of these three occasions. *See* Compl. ¶¶ 31-37, 38-41; 44-47. The only failure-to-promote claim that he identified in his EEOC filing was based on his failure to be promoted to the Senior Faculty/Chairperson of the Department of Public Administration in 2002. *See* Charge of Discrimination. Therefore, only that claim may be raised under Title VII.

Title VII of the Civil Rights Act of 1964 makes it an "unlawful employment practice for an employer . . . to discriminate against any individual . . ., because of . . . national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff can establish discriminatory intent under Title VII in two ways: (1) through direct evidence of discriminatory animus, or (2) through the application of the burden-shifting analysis employed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Here, Plaintiff has not provided direct evidence, and, as a result, the court's analysis will follow the

9

*McDonnell Douglas* scheme. As such, Plaintiff must first establish a prima facie case of discrimination, which creates an inference of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. In a failure to promote case a Title VII plaintiff establishes a prima facie case of national origin discrimination if he produces evidence that: (1) *he was a member of a protected national origin group;* (2) *he was qualified for a job for which the defendant-employer was seeking applicants;* (3) he was rejected for employment despite his qualifications; and (4) the position remained open and the defendant-employer continued to seek or accept applications from persons with the same qualifications but outside the protected class. *See Henson v. Liggett Group, Inc.,* 61 F.3d 270, 274 (4th Cir. 1995). Once Plaintiff has demonstrated a prima facie case, which creates only an inference of discrimination, the burden shifts to Defendants to rebut that inference by providing legitimate, nondiscriminatory reasons for the adverse action. *See Williams v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir. 1989) (citing *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985)). Assuming that Defendants do so, the burden then reverts to Plaintiff to "establish by a preponderance of the evidence that the proffered reasons are pretextual." *Id.* To this end, Plaintiff must prove that "the legitimate reasons offered by [Defendants] were not [the] true reasons, but were a pretext for discrimination." *Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981). The federal courts do not serve to second-guess workplace decisions; thus, the claim cannot be based on mere disagreement with the employment decision. *See DeJarnette v.*

10

*Corning, Inc.*, 133 F.3d 293, 298-99 (4th Cir. 1998). Plaintiff must come forward with admissible evidence that is more than self-serving opinions or speculation. *See Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998). Finally, while the *McDonnell Douglas* framework involves a shifting back and forth of the evidentiary burden, Plaintiff, at all times, retains the ultimate burden of persuading the trier of fact that the employer discriminated in violation of Title VII. *See Burdine*, 450 U.S. at 253. Nevertheless, "the burden of establishing a prima facie case of disparate treatment is not onerous." *Id.*

Here, the court must first determine whether Plaintiff has met the *McDonnell Douglas* prima facie case of discrimination based on Defendants' failure to promote him to the position of Senior Faculty/Chairperson of the Department of Public Administration in 2002. In his complaint, Plaintiff alleges that he is of African nationality, that he was qualified for the position of Senior Faculty/Chairperson of the Department of Public Administration, that the person picked to fill the position was not as qualified as he, and that the person picked to fill the chairperson position was not of African nationality, Compl. ¶¶ 14, 50-56. For instance, Plaintiff alleges that Penny does not have a Ph.D., is an Associate rather than a Full Professor, lacks the requisite publications in scholarly journals, and does not have the requisite teaching experience or qualifications listed in the job posting. *Id.* ¶¶ 51-54.

Plaintiff is clearly a member of a protected class and clearly did not receive the desired promotion. Therefore, assuming *arguendo* that Plaintiff were to establish a

11

prima facie case of discrimination in Defendants' decision not to promote him to position of chairperson (by comparing his own qualifications with those of the other candidates), Defendants have offered legitimate, non-discriminatory reasons for why Plaintiff was not promoted. Defendants explain the Search Committee's evaluation of many factors, including Penny's J.D. as compared to a Ph.D., the rest of his academic background, his teaching and practical experience, his expertise, and his leadership and administrative experience. Aware of Plaintiff's strengths, Dr. Christopher Kiramu, a member of the Search Committee who, incidentally, is also of African nationality, indicated that it was a "close call" between Penny and Plaintiff, but that the Committee ultimately concluded that Penny was the stronger candidate. Kiramu Dep. p. 85 (attached to docket no. 10).

Thus, since Defendants articulated legitimate, non-discriminatory reasons for why Plaintiff was not chosen for the position, the burden is shifted back to him to show that Defendants' stated reasons are pretextual. Plaintiff's evidence, focusing on his own subjective assessment of the candidates, is simply insufficient to establish pretext in this case of academic promotion. Likewise, even under the mixed-motive approach, see Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277 (4th Cir. 2004) (en banc), Plaintiff has failed to present evidence that discrimination on the part of the Committee members, NCCU, or Dean Johnson was a motivating factor in the decision to not offer him the promotion.

12

In opposition to Defendants' motion for summary judgment, Plaintiff reiterates these same allegations, going into great detail about the qualifications of each individual who filled the position of chairperson between 1999 and 2002. As attachments to his brief, Plaintiff presents evidence including curriculum vitae, class schedules, procedures for appointment, guidelines for search committees and the like. Plaintiff also filed depositions of Plaintiff, Dr. Kimaru, Dean Johnson, and Dr. Hall, and affidavits from Dr. Emmanuel Oritsejafor, Dr. Kofi Johnson, and Plaintiff, (located in expandable folders) and has subsequently filed an affidavit from Dr. Kimaru (attached to docket no. 35). Yet, even with the great volume of paper now before this court as evidence, Plaintiff discusses primarily the qualifications of various candidates for the position of department chairperson, Pl.'s Br., pp. 6-18.

This court does note that Plaintiff also asserts as evidence of discriminatory intent that Dean Johnson "condoned, or at least tolerated" discrimination because she did not take action when the Chair of Political Science referred to an African professor as "Jungle Man," *id.* at 18 (citing Kofi Johnson Aff. ¶¶ 3-5 (located in expandable folder)); that "Dean Johnson had blocked the tenure and promotion of foreign-born professors, while supporting the promotion of American blacks with lesser credentials," *id.* (citing Kimaru Dep. pp. 14-15 (located in expandable folder)); and that NCCU failed to follow its own policies or procedures, *id.* at 19 (citing Kimaru Dep. p. 119). This court finds, however, that no discriminatory animus can be imparted to Dean Johnson because of something the Chair of Political Science might

13

have said.[2] Moreover, it is noted that Plaintiff is a tenured African professor who was recommended for hiring, promotion, and tenure by Dean Johnson; thus his allegation about Dean Johnson not supporting African professors, standing alone, carries little weight. Last of all, the "procedures" about which Plaintiff complains simply do not rise to the level of evidencing discrimination.[3]

This court returns, then, to Plaintiff's arguments and evidence about the qualifications of the candidates. As Defendants point out, none of these allegations point to direct or circumstantial evidence that Plaintiff did not get the desired promotion because of animus toward his nationality (or favor for Penny's nationality for that matter) on the part of a relevant decision-maker of his employer. As for Plaintiff's own assessment that he is better qualified than Penny, the question of qualification is particularly complicated in cases about academic promotion. Plaintiff clearly believes that acknowledgment of his superior credentials leads to the conclusion that the hiring of Penny was motivated by national origin discrimination

---

[2] As noted already, on Defendants' motion, the court has stricken hearsay comments.

[3] The case that Plaintiff cites for the proposition that "[a]n employer's failure to follow its own policies or procedures with regard to an employment decision is evidence of discrimination," *Stiles v. General Elec. Co.*, No. 92-1886, 1993 WL 46889 (4th Cir. Feb. 12, 1993), says, specifically, "deviation from established procedures *creates no presumption of discrimination*, especially when there is little other evidence supporting a finding of discrimination," *id.* at **4 (emphasis added). The procedures about which Plaintiff complains include not listing his name on an Affirmative Action Compliance Report as having applied for the permanent position (during the 2000 application process for which Defendants claim Plaintiff did not submit a timely application); creating a closing date in 2002 when an advertisement had stated that the position would remain open until filled; the Search Committee's recommending only one, instead of two, names to Dean Johnson in 2002; and failure of the department to meet and consider Penny's rank or tenure. Pl.'s Br., pp. 19-20.

14

rather than qualification for the position. Yet, this circuit's court of appeals has clearly expressed a deference to academia in the context of reviewing faculty employment decisions which inevitably involve "subjective and scholarly judgments" with which the court is unlikely to interfere. *Smith v. University of North Carolina*, 632 F.2d 316, 345-47 (4th Cir. 1980). A defendant university's prerogative to pronounce its subjective and scholarly judgment about an employment decision makes it very difficult for a plaintiff to use academic credentials as circumstantial evidence of discrimination in a promotion decision under a mixed-motive or a pretext framework. Specifically, under the pretext framework, a defendant university's explanation of its employment decision can serve to meet its burden after a plaintiff has made a prima facie case, but it can also keep a plaintiff from making a prima facie case at all. It is possible that, to the extent that a defendant university can establish that qualification itself cannot be determined by credentials alone, a plaintiff may find it very difficult to demonstrate that she was qualified for the position. *See Smith* 632 F.2d at 345 (finding that although the plaintiff had established a prima facie case of discrimination in the defendant's decision not to reappoint, "with respect to the promotion decision, [she] had not even made out a prima facie case of discrimination" and explaining that "since professors are individuals and perform different roles within a department, it is difficult to compare the reasons for promoting one faculty member with the reasons for promoting or not promoting another"). *But see id.* at 341 (explaining that "[a]lthough the element of subjectivity makes proof of

15

the basic qualifications [that would merit promotion] more difficult, it, nevertheless, may be accomplished, for example, by comparing the qualifications of those individuals who were promoted recently" and further explaining that a comparison of qualifications can go to establishing the *fourth* prong, that the Title VII plaintiff has similar qualifications to those persons who the employer is seeking to recruit for the desired position).

Here, neither the mixed-motive framework nor the pretext framework can be satisfied. Plaintiff, the non-moving party, has not presented sufficient evidence for a fact-finder to return a verdict in his favor. *See Anderson*, 477 U.S. at 250, *Sylvia Dev. Corp.*, 48 F.3d at 817. Defendants have demonstrated the absence of a genuine issue of material fact, *see Celotex*, 477 U.S. at 323, as to whether Plaintiff's nationality, his protected trait, actually motivated Defendants' decision not to hire him as department chairperson in 2002, *see Reeves*, 530 U.S. at 141. Therefore, it will be recommended that the court grant summary judgment in favor of Defendant NCCU as to Plaintiff's Title VII claim.

Plaintiff's Section 1983 Claim

 I. Pertinent Allegations

A plaintiff's claim of discrimination under § 1983 may be analyzed under the same standards developed in Title VII cases. *Causey v. Balog*, 162 F.3d 795, 804 (4th Cir. 1998). This means that claims that are properly brought under both Title VII and § 1983 may be adjudicated with only one merits discussion. Unlike Title VII

16

claims, however, the scope of a lawsuit in a properly set forth § 1983 claim is *not* limited by the EEOC filing. *See, e.g., Causey*, 162 F.3d at 804 (limiting a § 1983 claim by statute of limitations rather than by EEOC filing); *Love v. Alamance County Bd. of Educ.*, 757 F.2d 1504, 1506 (4th Cir. 1985). Here, as the court has already noted, Plaintiff cited four instances in his complaint–occurring between 1999 and 2002–in which a position became open at NCCU, but where he was not chosen for the position. Thus, his § 1983 claim is purportedly based on all four incidents of failure to promote. Claims under § 1983 arising in North Carolina have a three-year statute of limitations. *Nat'l Adver. Co. v. City of Raleigh*, 947 F.2d 1158, 1161-62 (4th Cir. 1991). The cause of action accrues and the statute of limitations commences "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc). Two of the incidents that Plaintiff cites in the complaint clearly fall outside of the three-year statute of limitations for Plaintiff's § 1983 claim–that is, the employment decision made in 1999–when Dr. George Wilson was appointed as Acting Chair–and the employment decision made during the summer of 2000–when Dr. Zaphon Wilson was hired as Chairman. Therefore, on the face of the complaint, Plaintiff's § 1983 claim cannot be based on either of these two incidents because they are time-barred. *See id.* at 952.[4]

---

[4] The *Nasim* court approved the district court's dismissal of a § 1983 claim that was clearly time-barred on its face even without the affirmative defense of the statute of limitations being interposed. Recently, the Fourth Circuit has approved this *sua sponte*

17

Furthermore, the court has already held that Defendant should be granted summary judgment on the Title VII claim based on the failure to promote in 2002. Thus, the only employment decision upon which Plaintiff may base his § 1983 claim is the one made in 2001 when Dr. Jarvis Hall was appointed as Acting Chair. Therefore, this court will limit its discussion of Plaintiff's § 1983 claim to Plaintiff's failure to be appointed as Acting Chair in 2001.

The court first notes that Plaintiff has sued NCCU, through the Board of Governors, and Dean Johnson in both her official and individual capacities. *Hafer v. Melo*, 502 U.S. 21, 23 (1991) (while only declaratory and injunctive relief is available against the state or an individual acting in her official capacity for the purposes of § 1983, "state officials sued in their individual capacities are 'persons' for purposes of § 1983" and can, therefore, be sued for damages); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official capacities are 'persons' under § 1983"). A § 1983 claim for damages is not proper as to Defendant NCCU or to Defendant Dean Johnson in her official capacity. Thus, any claim for damages that Plaintiff may have under § 1983 can be against Dean Johnson in her individual capacity only.

Here, for the same reasons that the court concludes that Plaintiff has not established pretext for the hiring decision in 2002, the court finds that Plaintiff has

---

action by a district court in the state habeas context. *See Hill v. Braxton*, 277 F.3d 701 (4th Cir. 2002).

not established pretext for the appointment to the position of Acting Chair in 2001.
First, Plaintiff has clearly shown that he was a member of the protected class and that there is an issue of fact as to whether he was qualified for the position. Plaintiff alleges that Dr. Hall's academic credentials are not in the field of Public Administration and that Plaintiff was better qualified. *Id.* ¶¶ 40-41. Defendants have come forward with legitimate, non-discriminatory reasons for why they chose Dr. Hall for the position instead of Plaintiff. For instance, Defendants demonstrate the qualifications of Dr. Hall as they were assessed by Dean Johnson, Defs.' Br. p. 4, meeting their burden under the pretext framework. Defendants explain that Dean Johnson appointed Dr. Hall for "a number of reasons: his familiarities with departmental chair processes and procedures; his demonstrated skills in chairing his own Department of Political Science and his experiential understanding of courses and faculty relations within Public Administration." *Id.* at 4 (citing Johnson Aff. ¶¶ 19, 21; Johnson Dep. pp. 68-70; Hall Aff. ¶¶ 3, 5-7; Hall Dep. pp. 13-14). Here, as with Plaintiff's 2002 failure-to-promote claim, Plaintiff has not come forward with sufficient evidence to raise an issue of fact as to whether Defendants' stated reasons were pretextual. Thus, it will be recommended that the court dismiss Plaintiff's § 1983 claim based on his failure to be appointed to the position of Acting Chair in 2001.[5]

North Carolina State Constitutional Claim

---

[5] Even if the other two failure-to-promote claims (1999 and 2000) were not time-barred, the court would find no actionable § 1983 claim arising from those events for the same reasons.

19

Plaintiff also alleges a claim arising under the North Carolina Constitution against both NCCU and Dean Johnson in her official capacity. Nowhere in his pleadings, however, has Plaintiff identified any specific provision of the North Carolina Constitution that he contends that Defendants violated. Most likely, Plaintiff intends to sue under the "law of the land clause," see N.C. CONST. art. I, § 19, which provides, in pertinent part, "No person shall be denied the equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin." In *Pennhurst*, the Supreme Court held that the Eleventh Amendment bars a pendent claim against state agencies and officers seeking prospective injunctive relief for a violation of state law.[6] *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 103-17 (1984). For Eleventh Amendment purposes, state universities, such as NCCU, share the state's sovereign immunity. *Heckman v. University of N.C. at Chapel Hill*, 19 F. Supp. 2d 468, 474 (M.D.N.C. 1998) (citing *Huang v. Board of Governors of Univ. of N.C.*, 902 F.2d 1134, 1139 (4th Cir. 1990)). Thus, Eleventh Amendment immunity serves to bar Plaintiff's state constitutional claim against Defendant NCCU and against Defendant Dean in her

---

[6] The court notes that Defendants removed the case to this court. Under the United States Supreme Court's decision in *Lapides v. Board of Regents of the Univ. Sys. of Georgia*, 535 U.S. 613 (2002), removal to federal court constitutes a waiver of Eleventh Amendment immunity in "the context of state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings." *Id.* at 617-18. Thus, *Lapides* would operate to preclude Eleventh Amendment immunity in this case if North Carolina had waived immunity from Plaintiff's state law claims in its own courts. There is no indication that North Carolina has waived its immunity from claims brought under the state constitution.

official capacity.[7] Thus, summary judgment should be granted to Defendants' on this claim.

## III. Conclusion

For the reasons set forth here, this court **RECOMMENDS** that summary judgment (docket no. 10) be **GRANTED** for **DEFENDANTS**. Furthermore, **IT IS ORDERED** that Defendants' motion to strike (docket no. 19) be **GRANTED IN PART AND DENIED IN PART**, and that Plaintiff's motion to strike (docket no. 24) be **DENIED**. **IT IS ORDERED** that the parties stand down from final trial preparation unless directed otherwise by the district judge (this direction has no bearing on the settlement conference scheduled for March 22).

_Wallace W. Dixon_
Wallace W. Dixon
United States Magistrate Judge

March 14, 2005

---

[7] Finally, the court notes that the state constitutional claim, like the § 1983 claim, is also subject to a three-year statute of limitations. *See Staley v. Lingerfelt*, 134 N.C. App. 294, 297, 517 S.E.2d 392, 395 (1999). Thus, regardless of the merits, two of the employment decisions cited in the complaint would be time-barred for the purposes of Plaintiff's state constitutional claim.

21